The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Aymen A. ABDU, Defendant–Appellant.

No. 05CA1083.

Colorado Court of Appeals, Div. II.

May 14, 2009.

John W. Suthers, Attorney General, Jennifer A. Berman, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Robert T. Fishman, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge CONNELLY.

Defendant, Aymen A. Abdu, was convicted after a jury trial of one count of second degree assault, and was sentenced to two years in prison. His appeal asserts violations of the constitutional right to self-representation, the statutory right to a speedy trial, and the constitutional right to preservation of evidence. We affirm.

## I. Background

Defendant was jailed after a dispute with a gas station attendant. The one assault count on which defendant was convicted was for spitting at a nurse in the jail.

## II. Discussion

### A. The Self–Representation Issue

Defendant contends the trial court violated his federal and state constitutional right of self-representation under *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), and *People v. Arguello,* 772 P.2d 87 (Colo.1989). Because this right requires waiver of the fundamental right to counsel, and often ends up hurting a defendant, a defendant must make an unequivocal request to trigger it. Here, defendant's request to represent himself was not unequivocal but was tethered to a properly-refused demand for immediate trial. The trial court accordingly did not abridge defendant's right.

### 1. Background

The issue of self-representation first arose on November 9, 2004, during evidentiary hearings on several pretrial motions. Many expected trial witnesses, including the jail nurse, testified at those hearings. It became apparent on November 9 that the hearings and transcripts could not be completed before the then-scheduled trial date of November 16, 2004.

Defense counsel moved to continue the trial so the hearings could be completed and witness transcripts could be obtained for possible use at trial. Defendant (who was in pretrial detention) personally objected, but his counsel stated that absent a continuance she would be unable to provide effective assistance and would seek to withdraw.

Defendant told the court he wanted to go to trial November 16th and would represent himself if necessary. The court asked defendant to "sleep on" this decision; on Novem-

ber 10, defendant confirmed he still wanted to go to trial the next week. The court nonetheless granted defense counsel's motion to continue trial to February 1, 2005.

On November 15, 2004, defendant renewed his request to represent himself, and the court began advisements and inquiries relevant to waiver of counsel. The court made clear, however, that with or without counsel trial would not occur before February 1. Defendant stated in that event he would "continue with my lawyer."

Defendant was represented by counsel during continued motions hearings in December 2004 and January 2005 and at the trial itself. The trial began on February 1, 2005, and ended with the jury's verdicts on February 9, 2005.

### 2. Standard of Appellate Review

The standard for reviewing claimed denials of the right of self-representation is unsettled in Colorado. We conclude de novo review is appropriate. Other appellate courts have conducted de novo review to determine whether a trial court improperly denied a defendant's right of self-representation. *E.g., United States v. Cano,* 519 F.3d 512, 515–16 (5th Cir.2008); *People v. Danks,* 32 Cal.4th 269, 8 Cal.Rptr.3d 767, 82 P.3d 1249, 1267 (2004); *State v. Ochoa,* 675 N.W.2d 161, 170 (N.D.2004). In addressing the converse situation, of whether a pro se defendant validly waived counsel, our supreme court has applied a de novo standard. *People v. Alengi,* 148 P.3d 154, 159 (Colo.2006).

We recognize other divisions of this court have suggested that trial courts have discretion to deny self-representation in some cases, such as where an untimely request would disrupt ongoing trial proceedings. *See, e.g., People v. Shepard,* 989 P.2d 183, 185 (Colo.App.1999) (citing *People v. Mogul,* 812 P.2d 705 (Colo.App.1991)). But this case does not involve untimeliness or any other discretionary denial of self-representation, and we decline to read those cases as establishing a general abuse of discretion standard.

We also recognize federal appellate courts have accorded deference to state court "fac-

tual" determinations that a defendant never unequivocally sought self-representation. *Stenson v. Lambert,* 504 F.3d 873, 882 (9th Cir.2007); *Fields v. Murray,* 49 F.3d 1024, 1032 (4th Cir.1995); *Hamilton v. Groose,* 28 F.3d 859, 862 (8th Cir.1994); *Cain v. Peters,* 972 F.2d 748, 749 (7th Cir.1992). Such deference, however, may rest more on notions of federalism in habeas corpus review than on appellate review of trial court rulings in a unitary system. *But cf. United States v. Mackovich,* 209 F.3d 1227, 1237 (10th Cir. 2000) (applying clear error standard to review trial court's express factual finding that defendant did not make unequivocal request to represent himself).

Here, as will often be the case in a direct appeal of a criminal conviction, the trial court was not called upon to make any factual findings relevant to the self-representation issue. We accordingly will review the ultimate issue de novo. *See United States v. Smith,* 413 F.3d 1253, 1279 (10th Cir.2005) ("When a motion to proceed pro se is made, we review de novo whether a constitutional violation occurred and for clear error the factual findings underlying the district court's decision to deny the motion.").

### 3. Analysis

 The right to represent oneself is constitutionally protected but is not of the same magnitude as the competing right to counsel. *See United States v. Woodard,* 291 F.3d 95, 106 (1st Cir.2002) ("the right to counsel is paramount" where it collides with right of self-representation). Thus, "representation by counsel ... is the standard, not the exception." *Martinez v. Court of Appeal,* 528 U.S. 152, 161, 120 S.Ct. 684, 145 L.Ed.2d 597 (2000). Also, because "a pro se defense is usually a bad defense," *id.* (internal punctuation omitted), "[c]ourts must indulge every reasonable presumption against finding a waiver of the fundamental right to counsel." *Arguello,* 772 P.2d at 93 (citing *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938)).

 Unlike the self-executing right to counsel, a defendant seeking to represent himself "must make an unequivocal request to waive counsel and proceed pro se." *Peo-*

*ple v. Bolton,* 859 P.2d 303, 306 (Colo.App. 1993); *cf. Faretta,* 422 U.S. at 835, 95 S.Ct. 2525 (noting "weeks before trial, Faretta clearly and unequivocally declared to the trial judge that he wanted to represent himself and did not want counsel"). This requirement "acts as a backstop for the defendant's right to counsel" and "prevents a defendant from taking advantage of the mutual exclusivity of the rights to counsel and self-representation." *Adams v. Carroll,* 875 F.2d 1441, 1444 (9th Cir.1989). Absent an unequivocal request, courts "must ascribe a 'constitutional primacy' to the right to counsel because this right serves both the individual and collective good, as opposed to only the individual interests served by protecting the right of self-representation." *United States v. Frazier–El,* 204 F.3d 553, 559 (4th Cir.2000).

■ The presumption in favor of counsel is such that even where a defendant unequivocally requests self-representation, "the right may be waived through defendant's subsequent conduct indicating he is vacillating on the issue or has abandoned his request altogether." *Brown v. Wainwright,* 665 F.2d 607, 611 (5th Cir.1982) (en banc). In *Wilson v. Walker,* 204 F.3d 33 (2d Cir.2000), for example, a defendant "clearly and unequivocally asserted his right to represent himself." *Id.* at 37. Even though the trial judge denied the request, it became apparent at a later hearing that the judge "considered the matter still open for discussion." *Id.* at 38. The Second Circuit held the defendant's failure "to reassert his previously asserted right to represent himself" was an abandonment of the request. *Id.* at 39.

The trial court here never denied an unequivocal request for self-representation. While defendant's November 9 and 10 requests made clear he wanted to represent himself, the requests were linked to his equally clear insistence on a November 16 trial date. The trial court had discretion to continue that trial date (subject to the speedy trial limits discussed below), and then inquire into how defendant wished to proceed under the new schedule. When the inquiry was put directly to him, defendant left no doubt he wanted representation of counsel at any later trial. There accordingly was no denial of a request for self-representation and, in any event, defendant ultimately abandoned this request.

The parties to this appeal seek support for their respective positions from different decisions by divisions of this court: the People rely on *People v. Edwards,* 101 P.3d 1118 (Colo.App.2004), *aff'd on other grounds,* 129 P.3d 977 (Colo.2006), while defendant relies on *Mogul,* 812 P.2d 705. We believe *Edwards* is persuasive and supports the People's position. *Mogul,* in contrast, is distinguishable because it turned ultimately on an issue different from the one here.

In *Edwards,* after the trial court granted defense counsel's motion to withdraw, the "defendant indicated that he was 'prepared to go to trial today with or without an attorney.'" 101 P.3d at 1120. The trial court told the defendant it was going to continue the trial and appoint counsel. The defendant, who was represented at trial by new counsel, never again requested to represent himself. The division concluded the defendant "did not make an unequivocal request to proceed pro se" and thus was not denied "his right to self-representation." *Id.*

The circumstances in *Mogul* were factually similar in certain respects, but the division decided an issue different from the one dispositive of this appeal. There, on the morning of trial, after defense counsel moved for a continuance, the defendant requested that there be no continuance and that he be allowed to represent himself. 812 P.2d at 707. The trial court ruled the defendant had "waived" his self-representation right by not timely asserting it. *Id.* at 708. The division, concluding this was an abuse of discretion under the circumstances, reversed the conviction and remanded for a retrial at which "the defendant must be allowed to represent himself." *Id.* at 709–10.

Here, in contrast to *Mogul,* the issue is not whether defendant timely asserted the right to self-representation. There is no dispute that it would have been timely for defendant to assert the right on November 9, 10, or 15, 2004. Rather, the issue is whether on those dates defendant unequivocally asserted and was denied the right to self-representation.

On that issue, *Edwards* rather than *Mogul* is more analogous to this case.

We accordingly conclude defendant was not denied the right to represent himself. The trial court acted appropriately to preserve the mutually exclusive rights to counsel and to self-representation. Had it acted precipitously on November 9, 10, or 15, by allowing defendant to discharge counsel and proceed to trial unrepresented on November 16, an appellate court now would be confronting the more difficult issue of whether defendant had voluntarily waived his fundamental right to counsel or instead had been worn down by pressures of pretrial incarceration and a counsel who said she otherwise would need to withdraw. By deciding instead to continue the trial for a few months, the court ensured defendant's ultimate decision would be voluntary. And defendant voluntarily chose to proceed with counsel.

## B. The Speedy Trial Issue

Defendant makes a related contention that the November 2004 continuance of the trial to February 2005 violated his statutory speedy trial rights. As this contention does not turn on any disputed facts or matters of trial court discretion, we review it de novo. *See People v. Duncan*, 31 P.3d 874, 876–77 (Colo.2001).

The parties agree that, before the November 2004 hearings, the speedy trial deadline was set to expire in January 2005. During those hearings, defense counsel (over defendant's objection) moved to continue the trial. The court granted defense counsel's motion, set a new trial date in February 2005 (when trial in fact occurred), and set a new speedy trial deadline of May 2005. In so doing, it relied on Colorado case law that our state's speedy trial deadlines may be extended based on continuance motions filed by defense counsel without defendant's personal consent. *People v. Anderson*, 649 P.2d 720, 724 (Colo.App.1982); *see also New York v. Hill*, 528 U.S. 110, 120 S.Ct. 659, 145 L.Ed.2d 560 (2000) (similarly construing power of attorneys to agree to trial dates outside time periods otherwise required under the Interstate Agreement on Detainers).

■ This appellate challenge is barred because defendant never moved to dismiss the case on speedy trial grounds. Colorado law is clear that "[f]ailure to so move is a waiver of the defendant's [statutory speedy trial] rights." § 18–1–405(5), C.R.S.2008; *see Moody v. Corsentino*, 843 P.2d 1355, 1362 (Colo.1993); *People v. Drake*, 748 P.2d 1237, 1251–52 (Colo.1988).

There is no dispute that trial counsel never filed a speedy trial motion. This is not surprising given that counsel was the one who sought the three-month continuance that defendant now claims took the trial one month beyond the deadline.

Appellate counsel argues, however, that defendant's own statement at a November 2004 hearing should be construed as a motion to dismiss the case on speedy trial grounds. At that hearing, in the course of explaining why he should be allowed to represent himself at a November 16 trial, defendant stated, "I can dismiss my case and I believe that." Appellate counsel concedes "the meaning of this statement is not entirely clear." He argues the statement should be "liberally construed" in light of defendant's "imperfect" "command of the English language" and his other references to speedy trial rights.

We decline to construe defendant's statement as a motion to dismiss on speedy trial grounds. The statement appears in context simply to reflect a prediction, hope, or belief that defendant could prevail at a November 16 trial in which he represented himself. In any event, because defendant remained represented by counsel at the time of the statement, a pro se motion to dismiss could not then have been filed.

Even if defendant's November 2004 statement were construed as a motion to dismiss on speedy trial grounds, it would have been without merit. The parties agree the speedy trial deadline was not due to expire until January 2005, even absent defense counsel's continuance motion. The proper time for raising any motion to dismiss on speedy trial grounds accordingly was sometime after that and before the February 2005 start of trial. It is conceded that neither defendant nor his counsel made any such motion.

Defendant's waiver of any statutory speedy trial claim would not necessarily preclude a constitutional challenge. *See Moody*, 843 P.2d at 1362. Defendant does not appear to raise such a challenge, however, nor would one have merit. *See generally Vermont v. Brillon*, 556 U.S. ——, 129 S.Ct. 1283, 173 L.Ed.2d 231 (2009).

## C. The Destruction of Videotape Evidence Issue

█ Defendant finally contends due process was violated, and dismissal of the case was required, because the videotape recording of the incident was automatically recorded over pursuant to the jail's video recording system. We review the trial court's legal conclusions de novo and its factual findings for clear error. *See People v. Medina*, 25 P.3d 1216, 1223 (Colo.2001).

The Supreme Court has held that "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." *Arizona v. Youngblood*, 488 U.S. 51, 58, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988). Some courts have construed their state constitutions more broadly, *e.g.*, *State v. Morales*, 232 Conn. 707, 657 A.2d 585, 589–95 (1995), and defendant asks us to do likewise by not requiring bad faith as a *sine qua non* to a destroyed evidence claim. We are not at liberty to do so. Our supreme court, while once having adopted a broader test, has since "expressly declined to find a broader protection in the state constitution" than that provided federally by *Youngblood*. *People v. Wartena*, 156 P.3d 469, 475 (Colo.2007) (citing *People v. Greathouse*, 742 P.2d 334, 338–39 (Colo. 1987)).

Because defendant claims only that the videotape was potentially useful, and cannot show it had apparent exculpatory value when it was destroyed, he must show bad faith in order to establish a federal or state due process violation. We uphold the trial court's finding, after an evidentiary hearing, that the tape was not destroyed in bad faith.

There was no bad faith here under *Youngblood* because recording over the videotape occurred automatically and not through any deliberate decision to deprive defendant of evidence. Defendant argues he filed a general preservation motion a week after the incident and made specific inquiries about the videotape a week after that. But the trial court did not clearly err in crediting sworn testimony that the video system automatically recorded over tapes every twenty-four hours, which means the videotape would no longer have existed by the time defendant requested it.

Defendant argues the authorities were "grossly negligent" and that the facts are "remarkably similar" to those in *People v. Harmes*, 38 Colo.App. 378, 560 P.2d 470 (1976), a pre-*Youngblood* decision in which a divided panel of this court found a due process violation. The People argue *Harmes* is distinguishable because, among other things, a prosecutor there was aware of the videotape's existence yet the police manually and deliberately destroyed it. We need not linger over possible factual distinctions between the cases because it is clear that *Harmes*—in particular, its holding that "negligent destruction" of the videotape violated due process, 38 Colo.App. at 381, 560 P.2d at 473—cannot survive *Youngblood*.

We accordingly hold defendant has not established a due process violation under the identically-construed federal or state constitutions. The district court properly denied the motion to dismiss.

## III. Conclusion

The judgment is affirmed.

Judge CASEBOLT and Judge ROY concur.