Opinion by
 

 Chief Judge DAVIDSON.
 

 Defendant, William Edwards, appeals from the postconviction court order denying his Crim. P. 35 motion. We affirm.
 

 In a previous opinion in this appeal, a division of this court remanded the case to the postconviction court for further proceedings regarding defendant's claims that he was deprived of his constitutional rights to self-representation and to confront adverse witnesses:
 

 On remand the court should consider the merits of those claims, including any affirmative defenses that may be asserted by the prosecution, and, if necessary, hold an evidentiary hearing. If the court concludes that the claims can be resolved without a hearing, it should issue an order that details its findings of fact and conclusions of law.
 

 People v. Edwards, 2002 WL 1764426 (Colo. App. No. 00CA2006, Jan. 17, 2002)(not published pursuant to C.A.R. 35(F)). On remand, the trial court rejected both claims based on the existing record.
 

 
 *1116
 
 L.
 

 Defendant first contends that the trial court deprived him of his right to represent himself and that the postconviction court erred by denying his motion on that basis. We disagree.
 

 As a corollary to the constitutional right to counsel, a criminal defendant has the alternative right to self-representation. Colo. Const. art. II, § 16; Downey v. People, 25 P.3d 1200 (Colo.2001); People v. Stanley, 56 P.3d 1241 (Colo.App.2002).
 

 The right is personal to the defendant and may not be abridged by requiring a defendant to accept a lawyer when he or she wants to proceed pro se. People v. Romero, 694 P.2d 1256 (Colo.1985); People v. Vialpando, 954 P.2d 617 (Colo.App.1997).
 

 However, the right to self-representation is not unqualified, and to assert that right, a defendant must make a timely and unequivocal request to waive counsel and proceed pro se. People v. Vialpando, supra; People v. Harris, 914 P.2d 484 (Colo.App.1995). If a defendant's request to proceed pro se is stated in uncertain terms or in an uncertain manner, it cannot be considered either a demand for self-representation or a waiver of the right to counsel. People v. Shepard, 989 P.2d 188 (Colo.App.1999); People v. Bolton, 859 P.2d 303 (Colo.App.1993).
 

 Here, after the trial court granted defense counsel's motion to withdraw, defendant indicated that he was "prepared to go to trial today with or without an attorney." The court told defendant that his trial was not going to begin that day and asked whether he wanted the court to appoint an attorney who had previously represented him in other cases. Defendant indicated that he did not want to be represented by that or any other attorney and repeated that he was "prepared to go to trial and represent" himself.
 

 The court then told defendant:
 

 [WJhat I am going to do is reset your trial. I will appoint counsel to represent you. I will have that person come to the jail to talk with you. If you determine that you do not want representation that is an inquiry that [the judge who is going to preside at trial] can make of you.
 

 Defendant thereafter appeared for trial with counsel and did not express dissatisfaction with his new attorney, seek to have counsel removed, or request that he be permitted to represent himself.
 

 Based on this record, the postconviction court correctly concluded that defendant did not make an unequivocal request to proceed pro se and that he was thus not entitled to relief on the ground that the trial court deprived him of his right to self-representation. See People v. Shepard, supra; People v. Harris, supra.
 

 IL
 

 When police officers pulled over defendant's car for driving infractions, the victim, whose face had been badly beaten, got out of the car and ran toward them, yelling, "He beat me, he beat me." The victim was then transported to the hospital, where she told the doctor and nurse who treated her that she had been beaten and forced to smoke crack cocaine.
 

 The victim did not testify at trial. However, the trial court admitted a police officer's testimony regarding her statements at the scene pursuant to CRE 803(2), the excited utterance exception to the hearsay rule, and admitted the nurse's testimony regarding the victim's statements at the hospital under CRE 808(4), the hearsay exception that governs statements made for the purpose of medical diagnosis or treatment, and CRE 803(6), the business records exception.
 

 On appeal, defendant contends that, because the victim did not testify at trial, the trial court's admission of her statements violated his right to confront his accuser and that the postconviction court erred by denying his motion on that basis. We disagree.
 

 A.
 

 While this appeal was pending, the United States Supreme Court announced Crawford v. Washington, 541 U.S. 86, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), which abrogated the well-established two-prong test of Ohio v.
 
 *1117
 
 Roberts, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), for determining whether the admission of hearsay testimony violates a defendant's constitutional right of confrontation. See People v. Fry, 92 P.3d 970 (Colo.2004).
 

 Under Roberts, out-of-court statements made by a nontestifying witness are constitutionally admissible against an accused at trial only if the prosecution demonstrates that the declarant is unavailable and establishes that the statements either fall within a firmly rooted hearsay exception or possess "particularized guarantees of trustworthiness." Roberts, supra, 448 U.S. at 66, 100 S.Ct. at 2589; see also Stevens v. People, 29 P.3d 8305 (Colo.2001), overruled in part by People v. Fry, supra; People v. Dement, 661 P.2d 675 (Colo.1983), overruled in part by People v. Fry, supra; People v. Stephenson, 56 P.3d 1112 (Colo.App.2001).
 

 Crawford established a new test, which requires a threshold determination whether the challenged statements are testimonial in nature, and held that "testimonial" statements by a witness not present at trial may only be admitted if the declarant is unavailable to testify and the defendant had a previous opportunity to cross-examine the declar-ant. The Crawford Court thus held that cross-examination is the "constitutionally prescribed method for assessing the reliability" of testimonial statements in criminal trials. Crawford v. Washington, supra, 541 U.S. at -, 124 S.Ct. at 1870; see also People v. Fry, supra.
 

 A division of this court has recognized that Crawford applies retroactively to cases pending on direct appeal at the time it was announced. People v. Compan, 100 P.3d 583, 2004 WL 1123526 (Colo.App. No. 02CA1469, May 20, 2004). However, the question whether Crawford applies retroactively in postconviction proceedings involving convictions that became final before it was announced is an issue of first impression in Colorado. We conclude that Crawford is not applicable here.
 

 In Teague v. Lane, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), the Supreme Court held that a new constitutional rule of criminal procedure generally will not apply retroactively in cases on collateral review. A new rule is one that either "breaks new ground or imposes a new obligation on the States or Federal Government" or requires a result "not dictated by precedent existing at the time the defendant's conviction became final." Teague v. Lane, supra, 489 U.S. at 301, 109 S.Ct. at 1070, 108 L.Ed.2d at 349; see People v. Bradbury, 68 P.3d 494, 497 (Colo.App.2002).
 

 A rule is substantive "if it alters the range of conduct or the class of persons that the law punishes," while a procedural rule "regulate[s] only the manner of determining the defendant's culpability." Schriro v. Summerlin, - U.S. -, -, 124 S.Ct. 2519, 2528, 159 L.Ed.2d 442 (2004)(emphasis in original).
 

 As the Court in Crawford noted, the Confrontation Clause "is a procedural rather than a substantive guarantee," and, with respect to testimonial statements, cross-examination is the constitutionally required procedure for effectuating that guarantee. Crawford v. Washington, supra, - U.S. at -, 124 S.Ct. at 1370, 1378; see also People v. Fry, supra.
 

 Because the manner in which a procedural guarantee is implemented is itself procedural, Crawford announced a procedural, not a substantive rule. And because Crawford essentially overruled Roberts, at least as it applies to testimonial statements, its holding must be considered a new rule of eriminal procedure. See Murillo v. Frank, 316 F.Supp.2d 744 (E.D.Wis.2004)(under the Antiterrorism and Effective Death Penalty Act of 1996, Supreme Court cases that apply an "old rule" within the meaning of Teague constitute "clearly established federal law as determined by the Supreme Court" and therefore apply retroactively in habeas proceedings; because Crawford established a "new rule" within the meaning of Teague, it did not apply retroactively in a habeas proceeding in which the petitioner challenged the state court's prior adjudication of his Confrontation Clause claim); see also Graham v. Collins, 506 U.S. 461, 467, 113 S.Ct. 892, 897, 122 L.Ed.2d 260 (1998)(a decision announces a new rule if it expressly over
 
 *1118
 
 rules a prior decision); Martin Marietta Corp. v. Lorenz, 828 P.2d 100, 118 (Colo.1992)(to "establish a new rule of law, a judi-clal decision must either overrule clear past precedent on which the litigants may have relied or must resolve an issue of first impression not clearly foreshadowed by prior precedent").
 

 There are two exceptions to the general rule that new rules of criminal procedure do not apply retroactively to cases under collateral review. The first exception, which allows retroactive application when the new rule forbids criminal punishment of certain kinds of conduct, does not apply here. See Teague v. Lane, supra, 489 U.S. at 311, 109 S.Ct. at 1075.
 

 The second exception permits retroactive application of "watershed" rules. It is not enough that a new rule is "aimed at improving the accuracy of" criminal trials, Sawyer v. Snuith, 497 U.S. 227, 242, 110 S.Ct. 2822, 2831, 111 LEd.2d 198 (1990), or even promotes "the objectives of fairness and accuracy." Saffie v. Parks, 494 U.S. 484, 495, 110 S.Ct. 1257, 1264, 108 LEd.2d 415 (1990). To fit within this exception, the new rule must also be a "groundbreaking occurrence" that "alter[s] our understanding of the bedrock procedural elements essential to the fairness of a proceeding." United States v. Mandamicti, 205 F.3d 519, 528 (2d Cir.2000); see also Tyler v. Cain, 588 U.S. 656, 121 S.Ct. 2478, 150 L.Ed.2d 632 (2001); People v. Bradbury, supra, 68 P.3d at 496.
 

 The Teague Court recognized that retroactive application of constitutional rules not in existence at the time a conviction became final "seriously undermines the principle of finality which is essential to the operation of our criminal justice system." Teague v. Lane, supra, 489 U.S. at 309, 109 S.Ct. at 1074.
 

 Accordingly, the Court emphasized the rarity of such watershed rules and noted that because procedures that qualify for retroactive application under this exception must be "so central to an accurate determination of innocence or guilt," it is "unlikely that many such components of basic due process have yet to emerge." Teague v. Lane, supra, 489 U.S. at 818, 109 S.Ct. at 1077; see also Schriro v. Summerlin, supro Beard v. Banks, - U.S. -, 124 S.Ct. 2504, 159 L.Ed.2d 494 (2004).
 

 The rule announced in Gideon v. Wainwright, 372 U.S. 885, 88 S.Ct. 792, 9 L.Ed.2d 799 (1963), which applied the Sixth Amendment right to counsel to the states and held that indigent defendants have the right to court-appointed counsel in all eriminal prosecutions, is an example of a watershed rule. Beard v. Banks, supra; Saffie v. Parks, supra, 494 U.S. at 495, 110 S.Ct. at 1268-64; see also O'Dell v. Netherland, 521 U.S. 151, 117 S.Ct. 1969, 188 L.Ed.2d 851 (1997); United States v. Washington, 271 F.Supp.2d 278 (D.D.C.2008); United States v. Walls, 215 F.Supp.2d 159 (D.D.C.2002).
 

 However, as the Supreme Court observed in a very recent decision regarding the retroactive application of new rules of criminal procedure, "we have yet to find a new rule that falls under the second Teague exception." Beard v. Banks, supra, - U.S. at -, 124 S.Ct. at 2518-14; see also People v. Bradbury, supra, 68 P.3d at 499.
 

 Mindful that this second exception to the nonretroactivity rule is exceedingly narrow, we turn to an analysis of whether the rule announced in Crawford constitutes a watershed rule. We conclude that it does not.
 

 Like the rule announced in Gideon, the Confrontation Clause is a "bedrock procedural guarantee." Crawford v. Washington, su-pro, 541 U.S. at --, 124 S.Ct. at 1859. However, rules concerning its implementation do not necessarily constitute bedrock procedural rules. See Johnson v. McKune, 288 F.3d 1187, 1199 (10th Cir.2002)("Not every holding that draws on a wellspring rule is itself a wellspring holding."); see also People v. Khan, 4 MiscSd 1008, -, 2004 WL 1463027, *5 (N.Y.Sup.Ct. No. 499-90, June 28, 2004)(concluding that Crawford does not fall within the second Teague exception because, although "the Confrontation Clause is clearly a bedrock principle," Crawford "does not change principle, it only provides a test for the admissibility of hearsay statements to courts so that they can properly apply this bedrock principle"). Indeed, federal courts have held that other Supreme Court pro
 
 *1119
 
 nouncements concerning the Confrontation Clause do not constitute watershed rules and thus do not apply retroactively under the second Teague exception. See, e.g., Garcia v. United States, 278 F.3d 1210, 1215 (11th Cir.2002)(Supreme Court's decision that the use of a nontestifying codefendant's confession with defendant's name blanked out or marked "deleted" violated Confrontation Clause satisfies the accuracy prong, but not the fundamental fairness prong, of the see-ond Teague exception); Earnest v. Dorsey, 87 F.3d 1128 (10th Cir.1996)(Supreme Court rule that corroborating evidence may not be considered in determining reliability for Confrontation Clause purposes is not a watershed rule of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding).
 

 The difference between the rules announced in Roberts and Crawford is the manner in which they effectuate a criminal defendant's constitutional right to confrontation. As the supreme court noted in People v. Fry, supra, 92 P.3d at 976, the Crawford Court "refocused [the] analysis of Confrontation Clause violations, mandating not that evidence necessarily be reliable, but that its reliability be assessed in a particular manner." Specifically, Roberts permits a court to assess the reliability of a nontestifying witness's out-of-court statements through application of rules of evidence and the notion of "inherent reliability," while Crawford recognizes that whether such a statement is reliable depends upon whether it has been tested through "the crucible of cross-examination." Crawford v. Washington, supra, 541 U.S. at -, 124 S.Ct. at 1870.
 

 Like a rule that shifts the factfinding responsibility from a judge to the jury, a rule that recasts the way a court must answer a particular question (as opposed to changing the question itself) does not "so 'seriously diminish[ J' accuracy that there is an "imper-missibly large risk' of punishing conduct the law does not reach." Schriro v. Summerlin, supra, - U.S. at -, 124 S.Ct. at 2525. Accordingly, rules such as that announced in Crawford do not generally fall within the seope of the second Teague exception. Cf. Schriro v. Summerlin, supra (holding that Ring v. Arizona, 586 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), which held that a jury must determine the presence of aggravating cireumstances that make the defendant eligible for the death sentence under Arizona's sentencing scheme, does not apply retroactively to cases that became final before it was announced); Bilzerian v. United States, 127 F.3d 237, 241 (2d Cir.1997)(holding that Supreme Court decision that shifted the determination of materiality from the judge to the jury in a prosecution for concealing material facts from a federal agency does not fall within the second Teague exception).
 

 Crawford announced a new rule that clarified how the constitutional right to confrontation must be effectuated in some cases, but it did not define or otherwise alter our understanding of the meaning of the right itself. Accordingly, while Crawford is an important application of the bedrock guarantee that a criminal defendant has the right to confront adverse witnesses, it is not itself a core right or "bedrock principle." Crawford is simply not of the same magnitude as Gideon because, unlike Gideon, Crawford did not "cut a new rule from whole cloth." Coleman v. United States 8329 F.3d 77, 89 (2d Cir.2003)(discussing Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2848, 147 L.Ed.2d 485 (2000).
 

 Another difference between Gideon and Crawford is that the total deprivation of the right to counsel in violation of Gideon is a structural error constituting a "defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself." See Johnson v. United States, 520 U.S. 461, 468, 117 S.Ct. 1544, 1549, 137 LEd.2d 718 (1997)(quoting Arizona v. Fulimimnante, 499 U.S. 279, 310, 111 S.Ct. 1246, 1265, 118 L.Ed.2d 302 (1991)(total deprivation of the right to counsel requires automatic reversal). Such errors are not subject to plain or harmless error review. See also United States v. Cotton, 585 U.S. 625, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002); Key v. People, 865 P.2d 822 (Colo.1994); People v. Phillips, 91 P.3d 476 (Colo.App.2004).
 

 However, violations of the rule announced in Crawford constitute errors in the trial
 
 *1120
 
 process and are subject to either plain or harmless error review. See People v. Vigil, 104 P.3d 258, 2004 WL 18352647 (Colo.App. No. 02CAO0833, June 17, 2004); see also United States v. Manfre, 8368 F.3d 882 (8th Cir.2004)(harmless error); Smith v. State, - So.2d -, 2004 WL 921748 (Ala.Crim.App. No. CR-02-1218, Apr. 30, 2004)(harmless error); Watkins v. United States, 846 A.2d 298 (D.C.2004)(harmless error); People v. Martinez, 348 Ill.App.3d 521, 284 Ill.Dec. 546, 810 N.E.2d 199 (2004)(plain error); People v. Patterson, 347 Ill.App.3d 1044, 283 Ill.Dec. 871, 808 N.E.2d 1159 (2004)(harmless error); People v. Geno, 261 Mich.App. 624, 683 N.W.2d 687 (2004)(plain error); State v. Pullen, 594 S.E2d 248 (N.C.Ct.App.2004)(plain error); State v. Herrmann, 679 N.W.2d 503 (S.D.2004)(harmless error); Brooks v. State, 182 S.W.3d 702 (Tex.App.2004)(harmless error).
 

 We recognize that the standard for determining whether an error is structural is not coextensive with the second Teague exception, and classifying the erroneous application of a constitutional rule of eriminal procedure as structural does not necessarily "alter[ ] our understanding of bedrock procedural elements essential to a fair trial." Tyler v. Cain, supra, 588 U.S. at 667 n. 7, 121 S.Ct. at 2484.
 

 However, it is difficult to conceive of a rule that could be considered a watershed principle when a violation of the rule is susceptible to plain or harmless error review. See Coleman v. United States, supra, 329 F.3d at 90 ("it would be anomalous to say, on the one hand, that Apprendi errors are not 'structural-i.e., that they do not inherently deprive defendants of 'basic protections' or 'substantial rights'-and then to say, on the other hand, that Apprendi announced a 'watershed' rule of criminal procedure" (citations omitted); United States v. Mora, 298 F.3d 1218, 1219 (10th Cir.2002)(because Apprendi error can be exeused as harmless error where the evidence is overwhelming, it cannot be considered a watershed decision that is fundamental to due process); United States v. Sanders, 247 F.3d 189, 150-51 (4th Cir.2001) ("finding something to be a structural error would seem to be a necessary predicate for a new rule to apply retroactively under Teague"); Cain v. Redman, 757 F.Supp. 881, 836 (W.D.Mich.1990)(because the United States Supreme Court does not consider violations of Sandstrom v. Montana, 442 U.S. 510, 99 S.Ct. 2450 61 L.Ed.2d 89 (1979), concerning the constitutionality of burden shifting instructions "to be fundamental for harmless-error purposes, it is unlikely that the Court would consider [Sandstrom ] a watershed of fundamental fairness under Teague"), aff'd, 947 F.2d 817 (6th Cir.1991); Ferrell v. State, 902 P.2d 1113, 1115 (Ok.Crim.App.1995)(state supreme court decision finding that statute authorizing the admission of prior videotaped statements made by a nontestifying child sex assault victim violated the Confrontation Clause is not a watershed decision and thus does not apply retroactively under Teague because it "involves an error in the trial process itself, rather than a structural defect affecting the framework within which a trial proceeds, that is subject to harmless error analysis").
 

 We thus conclude that Crawford does not establish a watershed rule under the second Teague exception. Therefore, it does not apply retroactively to cases on collateral review where, as here, the defendant's convietion became final before Crawford was announced.
 

 B.
 

 Because Crawford does not apply here, we address the merits of defendant's claims under the Roberts test.
 

 Initially, we note that, because the distinction between testimonial and nontestimonial out-of-court statements is of no consequence under the Roberts test, we need not determine whether the statements at issue here are testimonial in nature.
 

 We also note that in People v. Fry, supra, which involved the admission at trial of an unavailable declarant's testimony at the defendant's preliminary hearing, the court overruled People v. Dement, supra, in which it adopted the Roberts test for purposes of determining whether the admission of hearsay statements violated the Colorado Constitution.
 

 
 *1121
 
 Here, however, because defendant contends only that the trial court's admission of the statements violated his federal constitutional right to confrontation, and does not challenge their admission under the Colorado Constitution, we need not determine whether the fact that Dement has been overruled applies retroactively. We also need not address whether Fry overruled Dement only with respect to testimonial statements, or whether we should continue to apply the Roberts-Dement test in analyzing whether the admission of an unavailable declarant's nontestimonial out-of-court statements violates the right to confrontation under the Colorado Constitution. But see People v. Compan, swpra (concluding before Fry was announced that the Roberts-Dement test still applies in such cases).
 

 Under Roberts, to satisfy its burden of establishing that the declarant was unavailable for purposes of the Confrontation Clause, the prosecution had to demonstrate that it made reasonable good faith efforts to obtain the declarant's presence as a witness. People v. Welsh, 58 P.3d 1065 (Colo.App.2002), aff'd, 80 P.3d 296 (Colo.2008); cf. CRE 804(a)(5) (unavailability as a witness includes situations in which the declarant is "absent from the hearing and the proponent of his statement has been unable to procure his attendance").
 

 However, when the declarant's statements fell within a firmly rooted hearsay exception, the prosecution was not required to establish unavailability for purposes of federal Confrontation Clause analysis. See White v. Illinois, 502 U.S. 346, 356, 112 S.Ct. 786, 743, 116 L.Ed.2d 848 (1992); People v. Compan, supra.
 

 Thus, evidence meeting the criteria of CRE 808(2), the excited utterance exception to the hearsay rule, was admissible regardless of whether the declarant was available as a witness.
 

 An excited utterance is a "statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." CRE 808(2); see also People v. Martinez, 83 P.3d 1174 (Colo.App.2008); People v. Martinez, 18 P.3d 881 (Colo.App.2000); People v. Mitchell, 829 P.2d 409 (Colo.App.1991); cf. People v. Moscat, 8 Misc.3d 789, 777 N.Y.S.2d 875 (N.Y.Crim.Ct.2004)(applying Cromford and concluding that a 911 call for help is nontestimonial and does not implicate the Confrontation Clause; its admissibility is determined by applying state's evidentiary rules regarding hearsay).
 

 Out-of-court statements that fit within the medical diagnosis or treatment exception to the hearsay rule may also be admitted without violating the Confrontation Clause despite the declarant's failure to testify at trial. Such statements include those describing "the inception or general character of the cause or external source" of the medical condition being treated if the statements are "reasonably pertinent to diagnosis or treatment." CRE 808(4); see also People v. Martinez, supra, 18 P.3d at 885.
 

 Likewise, evidence admissible under the business records exception to the hearsay rule, including hospital and other medical records, may be admitted without violating the defendant's confrontation rights. People v. Anonymous, 192 Misc.2d 570, 746 N.Y.S.2d 894 (N.Y.Sup.Ct.2002); Commonwealth v. Xiong, 428 Pa.Super. 186, 630 A.2d 446 (1998).
 

 Here, at a pretrial hearing, the prose-ecution stated its intent to introduce evidence of the victim's statements to the police officers under the excited utterance exception, and her statements to medical personnel under both the business records and medical diagnosis and treatment exceptions. Defendant objected to the admission of the statements on the ground that the prosecution had not made reasonable efforts to secure her presence at trial and had thus failed to establish that she was unavailable for Confrontation Clause purposes. The trial court granted the prosecution's motion for a brief continuance to try to locate the victim based on information defendant provided at the hearing.
 

 On the first day of trial, defendant renewed his objection to the admission of the victim's statements, this time on the ground that they did not fit within the hearsay exceptions relied on by the prosecution. The
 
 *1122
 
 court concluded that the victim's statements to the police officers were admissible as excited utterances, and, if the prosecution laid a proper foundation, the victim's statements to medical personnel would be admitted under either the business records or medical diagnosis and treatment exception. The court did not make any findings regarding the victim's unavailability.
 

 Defendant did not renew his objection to the victim's statements to police when they were admitted, but made contemporaneous objections to the admission of her statements to medical personnel. The trial court overruled those objections, and defendant did not renew his objection that the prosecution had not established the victim's unavailability.
 

 Based on its review of the existing record, the postconviction court concluded on remand that the trial court's admission of the statements did not violate defendant's confrontation rights because the statements were admissible under the excited utterance, business records, and medical diagnosis and treatment exceptions.
 

 The postconviction court also determined that the victim was constitutionally unavailable based on the prosecutor's representations at the pretrial hearing that (1) the victim did not appear at the preliminary hearing despite having been subpoenaed; (2) a warrant had issued for her arrest in an unrelated case; (8) the prosecutor had contacted both the district attorney's office and the victim's probation officer to enlist their help in locating her; and (4) the prosecutor contacted the coroner's office to determine whether the victim had died.
 

 Because there is record support for the postconviction court's conclusion that admission of the challenged statements did not violate defendant's confrontation rights, we find no abuse of discretion in its ruling.
 

 IIL.
 

 Finally, defendant contends that the post-conviction court erred by denying his motion without a hearing and that the failure to hold a hearing was contrary to the remand language in the opinion issued in the previous appeal. We reject the contentions.
 

 The mandate directed that the court hold a hearing on remand only "if necessary" and that if the court concluded "the claims can be resolved without a hearing, it should issue an order that details its findings of fact and conclusions of law."
 

 Because the motion, the files, and the record clearly establish that defendant is not entitled to relief, we find no error in the postconviction court's faflure to hold a hearing before ruling on the motion. See People v. Lopez, 12 P.3d 869 (Colo.App.2000); People v. Hartkemeyer, 848 P.2d 92 (Colo.App.1992).
 

 The order is affirmed.
 

 Judge CASEBOLT and Judge PLANK
 
 **
 
 concur.